JOHNNIE ORR, SR. V. STATE

No. 27,460. March 9, 1955
Rehearing Denied April 20, 1955
Appellant's Second Motion for Rehearing Denied
(Without Written Opinion) May 18, 1955

*Sidney Lee,* Texarkana, for appellant.

*Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

Appellant and one Joe Taylor were charged by indictment with theft of one cattle from Herbert Line, alleged to have been committed on or about May 8, 1954. The indictment contained allegations of prior convictions against both appellant and Joe Taylor, the allegation being that appellant was convicted in Bowie County for felony theft on October 24, 1946, and Joe Taylor was convicted in Morris County on April 26, 1946, for a like offense.

Appellant was separately tried and the jury, under a charge submitting the punishment for cattle theft and also the enhancement authorized by Art. 62 P.C., returned a verdict finding appellant guilty as charged and assessing his punishment at 10 years in the penitentiary.

The state relied upon circumstantial evidence. Appellant did not testify and urges that the evidence is not sufficient to sustain the jury's verdict. This requires a full statement of the evidence.

Appellant, Johnnie Orr, Sr., on and prior to May 8, 1954, resided in the 1600 block of Spruce Street, in Texarkana. He was employed in the office of a building materials warehouse by Mr. Johnnie Thompson, for whom he had worked for some time, and had been regularly employed for 6 or 8 months. On the afternoon of Friday, May 7, 1954, around 3:30 or 4 o'clock, Mr. Thompson paid appellant his wages and he left the warehouse in company with Joe Taylor, carrying with him the shirt, trousers and shoes later found in Taylor's car, and the keys to the Thompson warehouse. Mr. Thompson, his employer, did not see him again until some two months later. He testified that appellant called him from Dallas and then came to Texarkana, met him under a pre-arranged plan and they located the sheriff

and appellant made bond to answer the indictment herein that had been returned against him. Mr. Thompson testified that during a former employment appellant left without telling him he was going and took a job in San Angelo.

On the night of Saturday, May 8, 1954, about 9:30 or 10 o'clock, Texas Highway Patrolman Rhyne Henderson, accompanied by Henry Slaton, a policeman of the city of Texarkana, drove out the Summerhill Road, a black-top Farm to Market road, for a distance of some five and one-half miles from Texarkana. They returned off on a sandy country road leading from the Summerhill Road to the Richmond Road, and after traveling for some two miles, noticed a car parked on a woods road. It was in the edge of the woods and some 100 feet from the cut-off road they were traveling.

The car proved to be the Plymouth car owned by Joe Taylor.

The car lights were on, the trunk lid was raised, and a white sheet was spread out in the trunk. In front of the car and some 15 feet away the officers observed in the lighted area a partially skinned heifer calf laying on a sheet.

In the car were found, in addition to articles apparently belonging to Joe Taylor, a pair of khaki trousers, belt and shirt, a billfold containing a "driver's license" and a social security card issued to appellant. In a trousers pocket was found a set of Oldsmobile car keys and keys to Mr. Thompson's warehouse, which were identified by Mr. Thompson as his, and a credit card issued to Johnnie S. Orr. On the inside of the trousers, written in ink, was the name Johnnie Orr.

A pair of glasses was found laying on the car seat which was identified as those worn by appellant. Mr. Thompson, his employer, recognized them and testified that appellant wore such glasses while working for him. A pair of shoes, which Mr. Thompson thought belonged to appellant, were also in the car with mud and cow manure on the soles.

Also found in the trousers was a letter addressed to appellant, Johnnie S. Orr, Sr., 1609 Spruce Street, Texarkana, Texas, dated and postmarked at Austin, May 6, 1954. The letter was from the Texas Employment Commission.

There is evidence in the record to the effect that ordinarily a letter mailed at Austin would be delivered in Texarkana the

second day thereafter, though it was possible if the letter went out of Austin on an early train it could be delivered in Texarkana the following day.

A half-gallon fruit jar filled with gasoline was also found in the car.

On the ground at and near the scene were found a meat saw, a sledge hammer and a rope, and later a skinning knife and steel were found nearby.

The khaki trousers and shirt were laying across the seat of the car.

No one was found at the scene. Joe Taylor was arrested in Arkansas on May 10th, where he was found under the bed in "a little shot-gun house." "His arms were scratched awfully bad, and he was scratched across his stomach - - deep scratches, like barbed wire - - they were fresh."

A search was instituted for appellant but he was not found and not arrested until he surrendered to the sheriff and made bond some two months later.

A calf was alleged to have been stolen from Herbert Line who, the evidence discloses, was county judge of Bowie County. The state also relied upon circumstantial evidence to identify the partly skinned calf found near the Plymouth car. Neither Judge Line nor Edward Miller, who lived on his farm, were able to positively identify the head, hide or carcass as that of the calf missing from the Line Farm.

The 153 acre farm belonging to Judge Line was located on the east side of the Summerhill Road, some two miles from Texarkana.

On the afternoon of Saturday, May 8, 1954, Judge Line, as was his custom, went to his farm and remained there until about dark. His cattle, some 40 head in all, were in the middle pasture when he left the farm and he closed the gap in the cross fence and the gate that led into the Summerhill Road as he was leaving. He returned early the following morning and found his cattle scattered along the Summerhill Road. His gate and gap were open.

Judge Line and Miller checked the herd when they got them

back to the farm and found a calf missing. As to the missing calf, Judge Line testified: "When you raise a bunch of yearlings and cows such as I raised those, you know every single one in the bunch. The mother of the calf which was missing was one of two I called my twin heifers. I raised them both at the same time on one of my Jersey cows."

" . . . I checked the twin heifers although they had calves. One of these heifers' calf was with her and the other one was not. . . . It was a heifer calf. That calf was right close to a year old. It was - - I would say it would weight on foot between two hundred and fifty (250) and two hundred and seventy-five (275) pounds. It was a red calf with quite a bit of white on it. A lot of my calves don't have solid white faces. This calf had quite a bit of motley on it. It was a half-breed.

"Q. It was a motley-faced calf? A. That's correct."

He further testified that he saw the head and hide of the calf which the sheriff had on storage at the locker plant and testified: "I wouldn't positively say it was. To look at a hide and head after it has been butchered, they look pretty much alike, but not having a mark on the calf or brand, I wouldn't say that I positively identify the calf. . . . I will say it looked like my calf. . . . I feel that it was my calf."

The missing calf was unbranded and unmarked, and no brand or mark was found on the head or hide of the butchered heifer calf. No one claimed the calf found at the car other than Judge Line.

Judge Line further testified that the ground was kicked up at the gap in the cross fence, the marks on the ground being similar to those which would be made by a calf being pulled away from "its mammy." "They set their feet and slide along."

Similar marks were noticed at the gate leading to the Summerhill Road.

Both Judge Line and Miller testified that the calf was there on Saturday afternoon and was not found there or with the cattle again.

Miller also examined the head and hide at the locker plant and said that "it looked just like" the calf missing from the Line farm. He testified that the head and hide came from a solid red heifer calf with white spots on its leg, and white feet. It was

motley faced and had small buttons or horns, as did Judge Line's calf.

Appellant offered his wife as a witness. She testified that he came home on Friday, May 7, 1954, about 3:30 or 4 o'clock, accompanied by Joe Taylor; that he had nothing in his hand when he came in the house from Taylor's car; that Taylor stayed about five minutes and left; that appellant had been drinking and they were fussing about it and after an hour or two he left, taking with him two suitcases, walked away without saying what he was going to do and that she did not know where he went and did not see or hear from him again until he came back some two months later and made bond and Johnnie Thompson brought him home.

Appellant also offered as witnesses his daughter and son-in-law who testified that they took him to Houston on the night of May 7th, 1954, and left him in the bus station there. He also offered the witness Fred Long, who was married to appellant's step-daughter and lived in Houston. He testified that appellant came to his house in Houston on Saturday, May 8, 1954, about 2 p.m. and remained overnight.

The jury chose not to accept the testimony that appellant was in another place and could not have been present when the calf was stolen. It is not unlikely that the letter written and mailed from Austin on May 6th which had been delivered to appellant's home in Texarkana in time for it to be received by appellant, placed in his trousers pocket and left at the scene of the crime, and which under ordinary circumstances would not have been delivered before May 8th, had weight with the jury on the question of alibi.

The facts and circumstances above set out, viewed from the standpoint of the state, are deemed sufficient to sustain the jury's finding and to exclude every reasonable hypothesis other than that appellant participated in the theft of the calf in question and that it belonged to Judge Line.

Appellant next complains that he was not permitted to prove by Johnnie Thompson the conversation he had with Thompson upon his return to Texarkana some two months after the calf was found, wherein Thompson told him he was indicted for cattle theft and he said in reply he did not know of the indictment.

The conversation was properly excluded as hearsay and self-serving. Whether he was aware that an indictment had been returned would shed no light upon whether he fled to escape apprehension and arrest the night the calf was butchered.

Complaint is lodged against the failure of the court to grant appellant's application for continuance based upon the absence of the wife of his witness Long.

Subpoena for this witness was not applied for until October 5th, though the setting for October 11th was made on September 13th, 1954.

Further, the record does not reveal that an affidavit as to what the witness would have testified was submitted in connection with appellant's motion for new trial.

Under these facts reversible error in the overruling of the motion for continuance or the motion for new trial based thereon is not shown.

The remaining contentions raised in appellant's brief have been considered and are overruled.

The judgment is affirmed.

### ON MOTION FOR REHEARING

MORRISON, Presiding Judge.

On original submission we did not discuss Appellant's Bill of Exception No. 20 in detail. We shall do so now. Appellant's former employer Thompson, while testifying for the defense, stated that the appellant left on May 7 without giving any warning that he was quitting his job and that he did not see him for two months thereafter. He then stated that on July 2 the appellant called him from Dallas, but the witness was not permitted to give the jury the substance of their conversation at that time or later when the appellant arrived in Texarkana. For the purpose of the bill, in the absence of the jury, it was developed that Thompson would have testified as to the telephone conversation that the appellant asked about getting his job back and that Thompson told him that he would have to first "straighten up with the Sheriff." To this the appellant replied that "he didn't have anything to straighten up with the Sheriff." It was further developed that when the appellant arrived at

Texarkana he told the witness that he did not know that he had been indicted.

Appellant would have us hold that the appellant's statement that he had nothing to straighten up with the sheriff was admissible as an explanation of flight. He relies upon several cases, the strongest of which is Ballenger v. State, 63 Texas Cr. Rep. 657, 141 S.W. 91. In that case, certain cotton was stolen from the accused's place of employment and the accused fled. We held it error for the trial court to refuse to allow the witness Jones to testify in explanation of appellant's flight, evidence of which had been introduced by the state, that the appellant had told him, presumably while he was in hiding, that he was not avoiding arrest but was following the advice of his lawyer, who had suggested that he stay out of town until the guilt of a fellow employee could be established.

We must now determine whether the Ballenger case is here controlling. These statements of the appellant were made some two months after the theft, and he said he had nothing to straighten up with the sheriff. This statement said, in effect, "I am guiltless of all crime and hence have no business with the sheriff," but does it say, "I left town immediately following the theft because I was afraid that I and not the guilty party would be accused of the theft" or give any other explanation of his flight? We think not. The statement did not explain his flight; it merely said, "I am guilty of nothing," and the rule in the Ballenger case has no application here.

Remaining convinced that we properly disposed of this cause originally, appellant's motion for rehearing is overruled.